JOURNAL ENTRY and OPINION
Appellant Charles Durham appeals from the order of the Cuyahoga County Court of Common Pleas, Juvenile Division, that awarded permanent custody of his two daughters to the Cuyahoga County Department of Children and Family Services ("the agency").
Appellant contends the evidence presented does not support the juvenile court's decision. Appellant further contends the juvenile court's decision is based in part upon its failure to maintain a "detached" attitude toward him. After reviewing the record with appellant's contentions in mind, however, this court finds the juvenile court's decision is supported and the juvenile court's attitude was appropriate. Therefore, its decision is affirmed.
Appellant's two children are Chantell R., born on November 21, 1991, and Judith D., born on October 21, 1992. Their mother is Lois Rodgers, with whom appellant lived for a time. The children came to the attention of the agency in March, 1997 when it received complaints they were being neglected.
The record reflects the caseworker who investigated the complaints found appellant's children, along with their two younger siblings, alone in a "roach infested" and "greasy" home. The children were eating food from a floor upon which animal feces had been deposited. Upon further investigation, the caseworker determined the mother both had a "substance abuse" problem and in the presence of the children had engaged in "acts of domestic violence" with her former companion, viz., appellant.
The agency immediately filed a motion in the juvenile court for emergency temporary custody with regard to all of Rodgers' children. The juvenile court granted the motion; the agency there-upon placed the children with a foster family, the Owenses. Following a hearing, the juvenile court subsequently, in May, 1997, issued an order adjudicating the children to be neglected and granting the agency temporary custody.
In February, 1998 the agency filed an initial motion for permanent custody with respect to Rodgers' children. The motion was accompanied by the caseworker's affidavit. In pertinent part, the caseworker averred Rodgers and appellant had attended neither domestic violence nor parenting programs and also had failed to maintain adequate housing. While the motion was pending, the agency filed in the juvenile court an amended case plan for the family.
The juvenile court eventually held hearings on the initial motion for permanent custody in December, 1999. Based upon the evidence presented, the juvenile court determined an award of permanent custody to the agency at that time was unwarranted. It ordered, instead, the children's placement in a Planned Permanent Living Arrangement ("PPLA"), indicating the arrangement would be reviewed for its suitability "in six months." The juvenile court further specified in its order that the "Mother [was] not to have visits with any of the children." This order was journalized in March, 2000.
The record reflects the agency conducted a case review in June, 2000. Shortly thereafter, the agency filed a second motion for permanent custody of the children. In his affidavit attached to the motion, the current caseworker, Guillermo Torres, averred Rodgers had failed to complete any of the requirements of the case plan and remained chemically dependent. Torres further averred appellant had been "in violation of the [previous] court order * * * by allowing [the] mother to live in [his] home and [leaving] the children unsupervised in the care of the mother and * * * [taking] the children out of state to pick [the] mother up * * *."
The motion eventually proceeded to a two-part hearing beginning in January, 2001 and concluding on April 18, 2001. The juvenile court heard the testimony of Torres, foster mother Audrey Owens, and appellant and heard from the children's guardian ad litem. Thereafter, it issued its order granting the agency's motion for permanent custody.
The juvenile court found the agency had made reasonable efforts to reunite the family and, additionally, found in pertinent part as follows:
 1. The Mother of the children has failed to complete her case plan. * * *
 2. The Mother suffers form (sic) a chronic chemical dependency that is so severe that it makes her unable to provide an adequate permanent home for the children at the present time or in the foreseeable future.
* * *
 4. The alleged father Charles Durham has been in violation of the court order for mother not allowed contact with the children by allowing mother to live in the home and has left the children unsupervised in the care of the mother and took the children out of state to pick mother up from a visit to west (sic) Virginia.
 5. The children have been in the same foster home for four years and have bonded with the foster family and the foster family has expressed an interest to adopt.
 6. The children have been out of the home 12 out of the last 22 months.
 7. The parents have failed to remedy the conditions which caused the removal and the children cannot or should not be placed with either [of] the parents now or in the foreseeable future.
 When the Children were removed from the home of the parents and placed into foster care they were totally out of control[,] in need of medical care, in unstable living conditions and unable to function. In the last 4 years the foster parents have brought stability to their lives, have cared for all of their needs[,] made sure that they received all required medical attention and required discipline. The children have stability and are in a happy environment free from domestic strife and violence and are functioning at a high level.
The juvenile court ultimately stated its finding that "a grant of Permanent Custody is in the best interest of the children * * *."
Appellant has timely appealed from the foregoing order of the juvenile court. He presents the following as his sole assignment of error:
 THE DECISION OF THE TRIAL COURT AWARDING PERMANENT CUSTODY OF THE APPELLANT'S MINOR CHILDREN TO CCDCFS WAS NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE AND WAS INSUFFICIENT AS A MATTER OF LAW AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE WHERE THE ONLY FACTUAL EVIDENTIARY BASIS ADDUCED AT TRIAL WAS THAT THE APPELLANT HAD ALLOWED THE MINOR CHILDREN TO HAVE CONTACT WITH THEIR MOTHER CONTRARY TO PREVIOUS COURT ORDER WHICH HAD OCCURRED APPROXIMATELY EIGHT MONTHS PRIOR TO THE TIME OF HEARING AND ALSO PRESENTED EXTENUATING CIRCUMSTANCES.
Appellant argues the juvenile court's decision to grant permanent custody to the agency lacks an adequate evidentiary basis and results from a failure to maintain a detached demeanor toward appellant. Appellant's argument is unpersuasive.
R.C. 2151.414 provides in pertinent part as follows:
 [§ 2151.41.4] § 2151.414 Hearing on motion for permanent custody; notice; determinations necessary for granting motion.
* * *
 (B)(1) Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any
of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 For the purposes of division (B)(1) of this section, a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to section 2151.28 of the Revised Code or the date that is sixty days after the removal of the child from home.
* * *
 (D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 [2151.35.3] or division (C) of section 2151.415 [2151.41.5] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 (3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
* * *
(Emphasis added.)
Clear and convincing evidence is that measure of proof that will produce in the mind of the trier of fact a firm belief as to the facts sought to be established. In re Holcomb (1985), 18 Ohio St.3d 361, 368, citing Cross v. Ledford (1954), 161 Ohio St. 469. The juvenile court's determination that a fact has been proven by clear and convincing evidence is entitled to deference. In re Awkal (1994), 95 Ohio App.3d 309.
In this case, the juvenile court determined appellant's children fell within the ambit of R.C. 2151.414(B)(1)(d). The record clearly reflects appellant's children first had been placed into the agency's temporary custody in March, 1997. They thereafter had remained in the custody of the agency up until the time of the commencement of the hearing in January, 2001, a period of well over forty consecutive months. Therefore, the juvenile court's initial determination certainly is supported. In re E.M. (Nov. 8, 2001), Cuyahoga App. No. 79249, unreported.
Similarly, its determination that permanent custody served the children's best interest also is supported in the record. Mrs. Owens testified appellant's daughters were integrated into their foster family, were overcoming the behavioral and psychological problems with which they had been burdened upon their initial placement, and were receiving good grades in school. She stated she wanted to begin the process of adopting them, adding that although the children seemed to enjoy their visits with appellant, they had expressed no desire to return to his home.
Owens' testimony was supported by both the comments of the children's guardian ad litem and the testimony of Guillermo Torres, the agency's caseworker. Torres stated that appellant's children were aware of the uncertainty of their situation and were "scared, because they don't know what the future holds." Torres stated appellant's children, however, were "comfortable" with the "stability" of the foster home. Torres indicated despite appellant's completion of the case plan, two areas remained of concern. Appellant's "variable" work schedule created child-care problems. More importantly, appellant's honesty had been an "issue" throughout the proceedings.
Torres testified it had come to his attention appellant surreptitiously on many occasions had encouraged contact between the children and their mother in direct defiance of the court's order forbidding it. Those actions constituted a continuing concern because Rodgers currently lived "maybe four or five houses down" from appellant's residence.
During his testimony, appellant made several important admissions that supported a finding the children's best interest would be served by granting permanent custody to the agency. Appellant was aware of the court order forbidding contact between the children and Rodgers, and was aware the juvenile court issued the order because Rodgers had a problem with "drug abuse" that interfered with her ability to effectively parent and thus made her a danger to the children, but nevertheless not only allowed her into his home while the children were there but also left them alone with Rodgers when he was unable to obtain alternate child care. Owens earlier had testified that when she spoke to appellant regarding the necessity to prevent Rodgers from having access to the children, appellant had stated to Owens "that [Rodgers] is the mom, she needs her kids. If [appellant got] the kids, [appellant was] not going to deny her [her] children."
Furthermore, appellant admitted he and Rodgers had continued to have fights that could be physically violent at times. In addition, appellant admitted he had "helped [Rodgers] to get" her current residence so near his own. In view of Owens' testimony, the juvenile court, therefore, was within its prerogative to disregard appellant's assertion at trial he would refuse to permit Rodgers to see the children in the future.
Thus, clear and convincing evidence was presented that supports the juvenile court's determination that the best interest of the children required the granting of the agency's motion for permanent custody. In reHolyak (July 12, 2001), Cuyahoga App. No. 78890, unreported.
Finally, appellant's intimation in his appellate brief the juvenile court's order results not from the evidence presented but instead from a biased attitude lacks foundation in the record. As this court previously has observed:
 A trial judge has a duty to see that truth is developed and therefore should not hesitate to pose a proper, pertinent, and even-handed question when justice so requires. * * * A trial judge is presumed to act in a fair and impartial manner. * * * A trial court's questioning of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the interrogation was damaging to one of the parties. * * * In a bench trial, [moreover,] the judge has more freedom in questioning witnesses. * * *
In the Matter of Gray (Apr. 20, 2000), Cuyahoga App. Nos. 75984, 75985, unreported. (Citations omitted.)
In this case, the juvenile court's questions of each witness were designed to more fully explore his or her testimony. The tone of the questions indicates the juvenile court sought to ensure that it had all the relevant facts and that the best interest of the children would be served by its ultimate decision. The juvenile court's questions thus demonstrated only a genuine interest in the case rather than a failure to maintain a "detached attitude."
Since the juvenile court's order, therefore, appropriately is supported by evidence contained in the record, appellant's assignment of error is overruled.
The judgment is affirmed.
It is ordered that appellees recover of appellant their costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
DIANE KARPINSKI, A.J. and TERRENCE O'DONNELL, J. CONCUR